**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IN RE:

Todd Raines

Chapter 11, Subchapter V
Case No. 23-40189
Hon. Mark A. Randon

Debtor.

_____/

## PLAN OF REORGANIZATION

Todd Raines (the "Debtor") proposes this plan of reorganization (the "Plan")
through his undersigned counsel. This proposed plan of reorganization is subject to
Bankruptcy Court approval and is for the resolution of outstanding claims against
and interests in the Debtor pursuant to Chapter 11 of Title 11 of the United States
Code (the "Code").

### A. Description and History of the Debtor's Business

The Debtor is an individual that owns and operates National Filters, Inc.
National Filters, Inc. (NFI), is a major manufacturer of all types of filters with an emphasis
on hydraulic filters, which operates out of Harbor Beach, Michigan. The Debtor, his wife
and their son reside in Port Sanilac, Michigan. The Debtor also owns two other LLC's,
Raines Investments and JMP Filtration. These LLC's do not operate and have no income
and no expenses. Lastly, the Debtor owns Raines Holdings, Inc. This company owns the
real estate in Harbor Beach where NFI operates. This company acts as a pass through for
NFI and the real estate and neither makes a profit nor suffers a loss.

The LLC's and Raines Holding, Inc. do not file tax returns.

In late 2021 NFI filed a Chapter 11 Bankruptcy. While the filing of the Chapter 11 for NFI was successful in that it was able to confirm a plan in May 2022, the filing of the Chapter 11 had two dramatic effects on the Debtor in this case:

a) The Debtor's personal income from NFI has gone down, as was required, to allow the Debtor, in his role as the owner of NFI, to afford to make the required payments per NFI's Chapter 11 plan.

b) The Debtor in this case had signed numerous personal guarantees of NFI's debts. Many of those creditors who held the Debtors personal guarantees will not be paid in full in NFI's Chapter 11 case. They have now begun seeking to collect on those guarantees.

Faced with a reduction in household income, a lawsuit from a personal guarantee holder, and approximately $24,000 in priority tax debt the Debtor filed the instant Chapter 11.

**B. Liquidation Analysis.**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. In a liquidation, Debtor estimates a total of approximately $0.00 would be available to general unsecured creditors after deductions for liquidation costs, trustee fees and costs, legal fees and priority tax claims of the Michigan Treasury and the IRS.

The Debtor is offering $20,000 to general unsecured creditors.

**C. Ability to make future plan payments and operate without further reorganization.**

The Debtor has provided projected personal financial information as **Exhibit B**. The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $20,000 to be disbursed to general unsecured creditors after disbursements for administrative and priority claims. The final Plan payment is expected to be paid on or about August 1, 2028.

## ARTICLE 1 SUMMARY OF CLAIMS AND CLASSES

**This Plan provides for the following classes and claims:**

Group 1 Estimated Administrative Expense claims pursuant to 11 U.S.C.

| | |
|---|---|
| §507: Subchapter V Trustee fees: | $6,000 |
| Debtor's Chapter 11 counsel fees + expenses: | $30,000 |
| Less Retainer Deposit: | $5768 |
| Estimated Admin Expenses Due from Debtor: | $30,232 |

Class 1: Internal Revenue Service, Priority Personal Income Tax Claim of $17,535

Class 2: Michigan Treasury, Priority Personal Income Tax Claim of $5000

Class 3: Secured claim of Tri County Bank in the amount of $280,418

Class 4: Secured Claim of Byline Bank in the amount of approximately $2,000,000

Class 5: Secured Claim of Ally Financial in the amount of $11,543

Class 6: Secured Claim of Eastern Michigan Bank in the amount of $21,546

Class 7: Secured Claim of Harley Davidson in the amount of $17,845

Class 8: Secured Claim of Wyndam Vacation in the amount of $44,626

Class 9: Allowed Unsecured Claims in the amount of $3,928,799

## ARTICLE 2 TREATMENT OF CLASSES OF CLAIMS

**Group 1 Administrative Expense claims pursuant to 11 U.S.C. §507**

This class is Impaired.

Subchapter V Trustee fees of approximately $6,000

Debtor's Chapter 11 & Special counsel of approximately $30,000

2.      The Debtor will pay the claim of SubChapter V Trustee in the amount of $6000.00 as follows:

1.      $3000 within 30 days of any order entered by the Court approving his fees.

2.      3 Additional payments of $1000 per month with the first payment due in 30 days after the initial $3000 payment.

The Debtor will pay the claim of counsel in monthly payments of $650.00 with the first

Payment due 30 days after the final payment to the Subchapter V Trustee's fees are paid.

This proposed distribution is subject to increase if the Debtor incurs additional

administrative expenses including but not limited to additional attorney fees to promote

confirmation of a contested plan and additional Subchapter V Trustee fees necessary to

promote confirmation of this plan and/or to mediate plan confirmation by consent. Any increase in administrative expenses will be paid from the amounts the Debtor estimates for disbursement to Class 9 general unsecured creditors.

**Class 1: Internal Revenue Service, Priority Personal Income Tax Claim**

Amount of Priority Claim: $17,535

This class is impaired.

Debtor will pay the IRS priority claim in full over the 5 year term of the plan together with interest at 7 percent. Payments will be made in 48 equal monthly installments of $420 and will commence 180 days after the Effective Date.

**Class 2: Michigan Treasury, Priority Personal Income Tax Claim**

Amount of Priority Claim: $5000

This class is impaired.

Debtor will pay the Michigan Treasury claim in full over the 5 year term of the plan together with interest at 5.8 percent. Payments will be made in 48 equal monthly installments of $117.00 and will commence 180 days after the Effective Date.

**Class 3: Secured Claim of Tri County Bank**
**Collateral: Debtor's home**
**Claim Amount: $280,418**
**Value: $425,000**

This class is unimpaired. The Debtor will pay Class 3 pursuant to the mortgage loan he and his non filing spouse have presently have with Tri County Bank requiring monthly payments of $2246.

**Class 4: Secured Claim of Byline Bank**
**Collateral: Debtor's home**
**Not Impaired**
**Claim Amount: $2,000,000**
**Value: $144,582**

Byline Bank will retain its mortgage on the Debtor's home to secure the personal guarantee of the $2,000,000 loan owed by Raines Holdings to Byline Bank. It will not receive any payment under the plan.

**Class 5: Secured Claim of Ally Financial**
**Collateral: 2021 GMC Canyon**
**Not Impaired**
**Claim Amount: $11,543**
**Value: $20,000**

The Debtor will pay Class 6 regular payments under the contract terms of the note as they come due in the amount of $572.00 per month until paid in full.

**Class 6: Secured Claim of Eastern Michigan Bank**
**Collateral: 2016 River Forest Fifth Wheel**
**Not Impaired**
**Claim Amount: $21,546**
**Value: $21,546**

The Debtor will pay Class 6 regular payments under the contract terms of the note as they come due in equal monthly payments of $584.00 per month until paid in full.

**Class 7: Secured Claim of Harley Davidson Credit**
**Collateral:** Harley Davidson Motorcycle
**Claim Amount:** $17,845
**Value:** $17,000

This Class is impaired.

The Debtor has surrendered the collateral. Any deficiency balance shall be treated as a general unsecured debt.

**Class 8: Secured Claim of Wyndam Vacations**
**Collateral:** Wyndam Vacation
**Claim Amount:** $44,723
**Value:** $5000

This class is impaired.

The Debtor will surrender the collateral. Any deficiency balance shall be treated as a general unsecured debt.

**Class 9: Allowed General Unsecured**

**Claims** Estimated Allowed Claims Total:

$3,928.799

This class is impaired.

Debtor will make yearly disbursements to Class 10 Creditors in an amount of $6666.66 for total payment of $20,000. Payments will commence in year 3 of the plan and continue for 24 consecutive months. This distribution is subject to reduction equal to any increase in administrative expenses that exceed the Debtor's estimated administrative expense claims set out in Group 1.

## ARTICLE 3 ALLOWANCE AND DISALLOWANCE OF CLAIMS

a. **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

b. **Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order

c. **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 4 EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor  has no executory contracts or unexpired leases.

## ARTICLE 5 DISCHARGE

On the confirmation date of this Plan if deemed consensual confirmation, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in

§ 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (a) imposed by this Plan; (b) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (c) of a kind specified in § 1141(d)(6)(B).

In the event that this Plan is confirmed as a non-consensual plan, Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code upon payment in full of the sums required under this Plan and application to the Court.

## ARTICLE 6 PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## ARTICLE 7 RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute

between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## ARTICLE 8 LIQUIDATION ANALYSIS

The Debtor's Liquidation Analysis is attached as **Exhibit A**. The Debtor believes unsecured creditors would be paid at most $0 based on cost of sale upon liquidation and Chapter 7 administrative expense claims. The Debtor proposes payment of $20,000 totaled to be paid on a pro rata basis to unsecured creditors over the life of the plan.

**Risks, conditions and assumption in Liquidation Analysis.** All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition,

reflect the Debtor's best estimate of the market value of its assets, except where noted to the contrary. In establishing the values, Debtor has considered the size, age, physical condition and location of the assets.

## ARTICLE 9 PLAN IMPLEMENTATION

a. **Plan projections**. The Debtor has attached as **Exhibit B**, its summary of post-confirmation financial projections for the life of the Plan.

b. **Voting and Acceptance of the Plan.**

b.1. Debtor will only count ballots timely returned by impaired creditors.

b.2. If Debtor receives votes in an impaired creditor class, the plan shall be deemed accepted and confirmed by consent of the creditors if the ballots received in favor of the plan comprise a simple majority in number and two-thirds in dollar amount.

b.3. If no ballots are received or if an insufficient number of creditors vote in favor of the plan the Debtor may confirm the plan as a nonconsensual plan and after Substantial Consummation of the Plan, the Debtor shall make all disbursements due under the plan.

c. **Exemption from Certain Transfer Taxesand Recording Fees.** To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfer from a Debtor to any entity under, pursuant to, in contemplation of, or in connection with the Plan or through: (a) the issuance, distribution, transfer or exchange of any debt, securities or other interest in the Debtor; (b) the creation, modification, consolidation or recording of any mortgage, deed of

trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment or recording of any lease or sublease; or (d) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the fore going instruments or other documents without the payment of any such tax or governmental assessment.

d. **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

e. **Confirmation**

e 1. If the Plan is confirmed under section 119l(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Consummation of the Plan at which point its services shall terminate.

e 2. If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until the Trustee has performed such duties as are described in sections 1183 and 1194(b) and such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.

e. **Pre-Effective Date Injunctions or Stays.** All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

f. **Avoidance Actions.** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor.

g. **Professional Fee Claims.** All services performed or expenses incurred by any Professional on behalf of the Debtor or the Reorganized Debtor with respect to this Subchapter V Case after the Effective Date, shall be Administrative Claims and shall not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules,

including, without limitation, Bankruptcy Rule 2016, after the Effective Date, no Professional shall be required to disclose payments from the Debtor or the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Debtor and the Reorganized Debtor arising after the Effective Date shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall only review that portion to which the Reorganized Debtor objects. The Reorganized Debtor shall pay the portion not objected to in accordance with the terms of the invoices.

h. **<u>Change of Address.</u>** In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor or Subchapter V Trustee, as applicable, of any change in address. Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court. If the payment is not negotiated within three (3) months after being mailed, it shall be void and the Reorganized Debtor shall have no further obligation to such Creditor.

i. **<u>Vesting of Property.</u>** Title to all property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by the Plan. In the event this case is converted to a

Chapter 7, all property of the Debtor and reorganized debtor will revest in the estate.

j.  **Monthly Reports.** The Debtor will remain responsible for filing timely Monthly Operating Reports until this case is confirmed, dismissed or converted to Chapter 7.

k.  **Compromise of Litigation.** The Reorganized Debtor shall have the right to commence, continue, amend or compromise all causes of action (including without limitation any Avoidance Action) available to the Debtor, the Estate, the Debtor-in- Possession, or the Reorganized Debtor, whether or not those causes of action were the subject of a lawsuit as of the Confirmation Date.

## ARTICLE 10 MISCELLANEOUS PROVISIONS

a.  **Definitions and Rules of Construction.** The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

b.  **Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

c. **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

d. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

e. **Appendices.** The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

f. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

g. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michigan govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

h. **Corporate Governance.** Not applicable where this is an individual debtor.

i. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

j. **Confirmation Order Controls.** In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

k. **<u>Governing Law.</u>** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

l. **<u>Incorporation of Exhibits.</u>** All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. All Exhibits may be revised prior to the Effective Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

m. **<u>Modifications to the Plan.</u>** The Debtor may amend or modify the Plan and any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules or any

applicable court order. The Debtor expressly reserves its rights to alter, amend or modify materially the Plan, one or more times, after Confirmation, as provided by section 1193 of the Bankruptcy Code, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not material and adversely change the treatment of the Claim or Equity Interest of such Holder.

n. **<u>Courts of Competent Jurisdiction.</u>** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan or in this Subchapter V Case, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

o. **<u>Notice.</u>** All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and

telephonically confirmed

p. **Reservation of Rights.** The filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, shall not be deemed to be an admission or waiver of any rights of the Debtor with respect to any Holders of Claims against or Equity Interests in the Debtor.

q. **No Waiver.** Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of a Debtor to object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or its respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a) object to or examine such Claim, Administrative Claim or Equity Interest, in whole or in part, or (b) retain or either assign or

exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim or Equity

Interest.

r. **Release of Liens.** The Debtor, Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgages, releases or terminations.

s. **Setoffs and Counterclaims.** No Creditor(including without limitation Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to set off a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract. Unless expressly asserted in this Subchapter V Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan. The terms of this paragraph 11.12 shall not apply to any taxing authority.

t.  **Successors and Assigns.** This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

u.  **Default.** In the event of Debtor's monetary default on the terms of the Plan any creditor or party in interest may seek to reopen this Chapter 11 case to seek conversion or dismissal of the case.

v.  **Plan Payments.** The Debtor, Todd Raines, shall be responsible for making the plan payments.

w.  **Substantial Consummation.** Substantial Consummation of the plan shall occur after the Debtor has made two consecutive monthly disbursements under the confirmed plan. If the plan is confirmed pursuant to 11 USC § 1191 (a) the Debtor shall be obligated to file a Notice of Substantial Consummation when it occurs.

WHEREFORE the Debtor prays for entry of an order confirming this plan.

Dated:  3/24/23

Respectfully Submitted,

/s/ George E. Jacobs
    George E. Jacobs (P36888)
    Atttorney for Debtor
    2425 S. Linden Rd., Ste. C
    Flint, MI 48532
    810-720-4333
    george@bklawoffice.com

**EXHIBIT A**

LIQUIDATION ANALYSIS

A.  Introduction

· Under the "best interests of creditors" test set· forth in section l 129(a)
(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan
of reorganization unless the plan provides each holder of a claim or
interest, who does not otherwise vote in favor of the plan with property of
a value, as of the effective date of the plan, that is not less than the
amount that such holder would receive or retain if the Debtor was
liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that
the Plan satisfies the "best interests of creditors" test, the Debtor has
prepared the following hypothetical Liquidation Analysis. The
Liquidation Analysis estimates potential Cash distributions to Holders of
Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of
the Debtor's assets. Asset values discussed in the Liquidation Analysis
may differ materially from values referred to in the Plan and Disclosure
Statement.

B.  Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of and hypothetical proceeds from the
liquidation of the Debtor's assets is an uncertain process involving the

extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

**NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

C.   Notes Applicable to the Liquidation Analysis

1.Appointment of a Chapter 7 Trustee

Pursuant to 11 U.S.C. §1129(a)(7)(A)(ii), the liquidation value, for purposes of the "best interest of creditors" assessment, is to be made as of the effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding its asset and liability base will not have significantly changed.

2.Liquidation Value

For the Debtor's interest in personal property, the liquidation values take into account the presumed costs of sale, including sales broker fees of 6 percent for real estate if applicable. Net forced sale value is the estimated net recovery amount anticipated less sale expenses such as auctioneer fees and sale costs or

40 percent of present market value. Deductions are made following the liquidation chart for Chapter 7 Trustee statutory fees, and an estimate for the fees of the Trustee's professionals. The Debtor did not take into account the value of potential avoidance actions, as the Debtor does not anticipate pursuing any potential avoidance actions. The Debtor does not anticipate pursuing any potential avoidance actions due to the fact that the Debtor believes the

defendants would have ordinary course and new value defenses. The Debtor's plan projections and liquidation analysis demonstrate the Debtor's ability to pay unsecured creditors in full over the term of the plan, making the pursuit of avoidance actions unnecessary.

## SUMMARY LIQUIDATION ANALYSIS

| Property Description | Exemptions | Liens | Estimated Value | Forced Liquidation Value (After Liquidation Expenses) |
|---|---|---|---|---|
| 185 S. Lake St., Port Sanilac, MI | 0 | $425,000 | $425,000 | $0 |
| Cash on Hand (d)(5) | $1367 | $0 | $1367 | $0 |
| 2020 GMC Canyon (d)(5) (d)(2) | $8457 | $11,543 | $20,000 | $0 |
| 2019 Harley Davidson | $0 | $17,845 | $17,000 | $0 |
| 4 wheeler (d)(5) | $500 | $0 | $500 | $0 |
| Forest Rover Fifthwheel | $0 | $21546 | $21,546 | $0 |
| Household Goods | $16,000 | $0 | $16,000 | $0 |
| Jewelry | $1000 | $0 | $1000 | $1,000 |
| Clothing | $500 | $0 | $500 | $0 |
| Raines Holding | $0 | $0 | $0 | $0 |
| Raines Investments | $0 | $0 | $300 | $0 |
| Wyndam Vacations | $0 | $44,723 | 5000 | $0 |

| | | | | |
|---|---|---|---|---|
| JMP Filtration | $0 | $0 | $0 | $0 |
| Insurance policy | $2 | $0 | $2 | $0 |
| 401k | $11,684 | $0 | $11,684 | $0 |

NET RECOVERY to CHAPTER 7 ESTATE:      $0

LESS CH 7 TRUSTEE ATTORNEY FEES:      $0

LESS CH 7 TRUSTEE FEE:      $0

NET CASH TO CREDITORS:      $0

LESS PRIORITY CLAIMS:      $22,535
*IRS, MI Treasury, Dept. of Labor

NET BEFORE UNSECURED CREDITORS      ($22,535)

NET TO GENERAL UNSECURED CREDITORS: $0

## YEARLY PROJECTION OF INCOME EXPENSE
## PLAN PAYMENT AND CASH FLOW

|  | **YEAR 1** | **YEAR 2** | **YEAR 3** | **YEAR 4** | **YEAR 5** |
|---|---|---|---|---|---|
| **NET INCOME AFTER TAXES:** | $121,008.00 | $123,186.00 | $125,268.00 | $126,898.00 | $128,109.00 |
| **EXPENSES:** | | | | | |
| HOME INSURANCE | 2,280.00 | 2,348.00 | 2,416.00 | 2,485.00 | 2,554.00 |
| HOME INSURANCE | 1,800.00 | 1,854.00 | 1,908.00 | 1,962.00 | 2,016.00 |
| GAS / ELECTRIC | 4,884.00 | 5,030.00 | 5,177.00 | 5,324.00 | 5,470.00 |
| WATER / SEWER | 1,224.00 | 1,260.00 | 1,298.00 | 1,334.00 | 1,371.00 |
| TELEPHONE | 2,400.00 | 2,472.00 | 2,544.00 | 2,616.00 | 2,688.00 |
| FOOD | 12,096.00 | 12,458.00 | 12,821.00 | 13,184.00 | 13,348.00 |
| CLOTHING | 1,200.00 | 1,236.00 | 1,272.00 | 1,308.00 | 1,344.00 |
| PERSONAL CARE | 600.00 | 618.00 | 636.00 | 654.00 | 672.00 |
| MEDICAL | 2,352.00 | 2,423.00 | 2,494.00 | 2,564.00 | 2,634.00 |
| TRANSPORTATION | 6,000.00 | 6,180.00 | 6,360.00 | 6,540.00 | 6,720.00 |
| ENTERTAINMENT | 1,200.00 | 1,236.00 | 1,272.00 | 1,308.00 | 1,344.00 |
| CANADIAN EXPENSES | 288.00 | 288.00 | 306.00 | 314.00 | 323.00 |
| NON-FILING SPOUSE DEBT SERVICE | 17,940.00 | 17,940.00 | 17,940.00 | 17,940.00 | 17,940.00 |
| VACATION, GIFTS, EMERGENCIES | 2,412.00 | 2,485.00 | 2,556.00 | 2,630.00 | 2,701.00 |
| LIFE INSURANCE | 4,248.00 | 4,248.00 | 4,502.00 | 4,630.00 | 4,758.00 |
| CAR INSURANCE | 5,352.00 | 5,512.00 | 5,673.00 | 5,834.00 | 5,994.00 |
| **EXPENSES TOTAL:** | $66,276.00 | $67,588.00 | $69,175.00 | $70,627.00 | $71,877.00 |
| **NET INCOME AFTER EXPENSES:** | $54,732.00 | $55,598.00 | $56,093.00 | $56,271.00 | $56,232.00 |
| **YEARLY PLAN PAYMENT:** | -$53,946.00 | -$55,068.00 | -$56,017.00 | -$55,007.00 | -$55,007.00 |
| **PLAN CASH FLOW:** | **$786.00** | **$530.00** | **$76.00** | **$1,264.00** | **$1,225.00** |

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                        Chapter 11

Todd Raines,                                  Case No. 23-40189

      Debtor.                               Hon. Mark A. Randon

_____/

## ORDER ESTABLISHING DEADLINES AND PROCEDURES
## IN THE CASE OF A DEBTOR WHO HAS ELECTED
## TO HAVE SUBCHAPTER V OF CHAPTER 11 APPLY

      After reviewing the schedules and statement of financial affairs and consulting with the
debtor and the other parties who appeared at the status conference, the Court concludes that this
case is appropriate for the procedures set forth in this order, and establishes the following
deadlines, hearing dates, and procedures. The purpose of this order is to expedite the debtor's
reorganization and to secure "the just, speedy, and inexpensive determination of [this] case . . . ."
Fed. R. Bankr. P. 1001.

1.    **Deadlines and Hearing Dates**. The following deadlines and hearing dates are
established:

    a.    The deadline for the debtor to file motions under ¶ 4, below is ***March 10,
2023***.

    b.    Under 11 U.S.C. § 1189(b), the deadline for the debtor to file a plan under
¶ 2, below is ***April 10, 2023***. Immediately after filing the plan, the debtor
must serve the plan, a ballot as appropriate, and this order on the
Subchapter V Trustee, the United States Trustee, all creditors, all equity
security holders, and all other parties who have requested service, and the
debtor then must promptly file proof of such service.

    c.    The deadline to return ballots on the plan, as well as to file objections to
confirmation of the plan under ¶ 3, below, is ***May 30, 2023***. The
completed ballot form must be returned by mail to the debtor's attorney:
***George E. Jacobs, 2425 S. Linden Road, Suite C, Flint, MI 48532***.

    d.    No later than ***June 5, 2023***, the debtor must file a signed ballot summary
indicating the ballot count under 11 U.S.C. § 1126(c) & (d). A copy of all
ballots must be attached to this summary.

    e.    The hearing on confirmation of the plan will be held on ***June 12, 2023, at
11:00 a.m.*** At least five minutes prior to the scheduled time for hearing,
counsel and parties should call 1-888-363-4734 and use Access Code

2795304.  Please place phone on mute and wait until your case is called. Once case is called, unmute phone and participate.

f.      The deadline for all professionals to file final fee applications under ¶ 5, below is ***30 days after the confirmation order is entered***.

g.      The deadline for the debtor to file a motion to extend the deadline to file a plan under ¶ 7, below is ***March 10, 2023***.

h.      These dates and deadlines are subject to change upon notice if the debtor files a plan before the deadline in paragraph b, above.

2.   **The Plan**.  The debtor must begin to negotiate the terms of a plan of reorganization as soon as practicable.  By the deadline established in paragraph 1b, above, the debtor must file a plan of reorganization.  If the debtor fails to meet this deadline, the case may be dismissed or converted to chapter 7 under 11 U.S.C. § 1112(b)(4).

3.   **The Confirmation Hearing**.  Parties may file objections to confirmation of the plan by the deadline established in paragraph 1c above.  Objections must be served on the attorney for the debtor, the Subchapter V Trustee, and the United States Trustee.  A proof of such service must be filed with the objections. Objections which are not timely filed and served will be deemed waived.

4.   **Expediting the Debtor's Reorganization.**  If necessary to file a plan by the deadline established in this order, the debtor must file any motions or requests to value security pursuant to L.B.R 9014-1 by the deadline established in paragraph 1a, above.

5.   **Fee Applications**.  Unless the Court orders otherwise, each professional may file one and only one final fee application.  Such applications shall be filed pursuant to L.B.R. 2016-1 and L.B.R. 9014-1 by the deadline set forth in paragraph 1f, above.

6.   **Motions to Extend the Deadline to File a Plan**.  Any motion to extend the deadline to file a plan must be filed by the deadline in paragraph 1h, above. The motion must demonstrate by affidavit or otherwise that the deadline extension is needed, and that the need for the deadline extension is attributable to circumstances for which the debtor should not justly be held accountable. *See* 11 U.S.C. § 1189(b).  The Court may schedule a hearing.  Counsel for the debtor must serve the motion and any notice of the hearing on the Subchapter V Trustee, the United States Trustee, all secured creditors, and the 20 largest unsecured creditors, and must file a proof of service.

**Signed on March 7, 2023**

- 2 -



/s/ Mark A. Randon

Mark A. Randon
United States Bankruptcy Judge

- 3 -

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION**

In Re:                                          Case No. 23-40189
                                                Chapter 11
Todd Raines                                     Hon.    Mark A. Randon

      Debtor.
_____/

### CLASS [   ] BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION

      Bankruptcy Law Office  filed a plan of reorganization dated
March 24, 2023, (the "Plan") for the Debtor in this case.

**You should review the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Bankruptcy Law Office, 2425 S. Linden Rd., Ste. C, Flint, MI 48532, on or before May 30, 2023, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

### ACCEPTANCE OR REJECTION OF THE PLAN

*(Check one box only)*

[   ]  ACCEPTS THE PLAN                          [   ] REJECTS THE PLAN


Dated:_____       Print or type name:_____

                      Signature:_____

                           Address: _____

                                    _____
                                   _____
                                   _____

RETURN THIS BALLOT TO:
Bankruptcy Law Office
George E. Jacobs
2425 S. Linden Rd., Ste. C
Flint, MI 48532